[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit came to this court by writ, summons and complaint dated February 16, 1995 and returnable March 7, 1995 in a single count claiming statutory damages, attorney's fees, return of security deposit monies, accrued interest thereon and damages of twice the value of the security deposit all rounded on a landlord tenant relationship during the period of November 1, 1992 through November 19, 1994.
The defendant appeared by counsel on February 22, 1995. CT Page 8475
The writ had initially been brought in the G.A. Housing Court at New Britain but after the filing of a Motion to Transfer Venue was transferred to the G.A. 21 Housing Docket.
The defendant filed an Answer on April 4, 1995 to the complaint. On the same date, April 4, 1995, the defendant filed a Cross Complaint by a separate pleading seeking certain damages, attorney's fees and costs. On April 17, 1995, the plaintiff filed an Answer to the Cross Complaint. On June 9, 1995, the defendant, Chick, on the initial complaint, filed a Motion to Amend Answer as to paragraphs 13 and 14, to claim the right of set off and to plead a special defense. This motion was heard by the court prior to the commencement of trial on June 15, 1995 and granted.
The court makes the following findings of fact.
The plaintiffs, Scott Shaner and Lisa Shaner, hereinafter ("Shaner") entered into a printed and typed lease with the defendant, Laura Chick, hereinafter ("Chick") on September 25, 1992, concerning premises known as 47 First Street, Lebanon. (Plaintiffs' Exhibit 1.) Said lease was for the term of one year to wit November 1, 1992 to October 31, 1993. The monthly rental payments were $775.00. The premises were leased as a dwelling for Shaner.
Shaner was responsible for all utilities. The lease provided, #7 "We may also enter the house at reasonable times to show the house to actual or possible purchasers, mortgage lenders, tenants, workmen or contractors. We will give you reasonable notice of our intent to enter the house." The lease provided for a security deposit of $1,550.00, #14.
Chick gave permission to Shaner to move in prior to November 1, 1992. On September 27, 1993, the term in the above noted lease, drawing to a close, Shaner signed a new one year lease for the same subject premises for the period of November 1, 1993 to October 31, 1994. (Plaintiffs' Exhibit 3.) The rent in the new lease was the same as in the prior lease, $775.00 monthly, and the terms and conditions were basically the same as in the prior lease including entry by the landlord.
During 1993 and 1994, Shaner was having a home built by CT Page 8476 a contractor. In October, 1994, Shaner's builder indicated he could not finish Shaner's new home until sometime in November, 1994. It could not be completed by October 31, 1994.
On August 31, 1994, Shaner wrote to Chick indicating an intent to stay beyond the October 31, 1994 date because their builder could not finish their home on time. This letter also referred to contacts between Shaner and the Housing Court Specialist at G.A. 21 and Shaner's attorney regarding the request for an extension of the lease. That letter also contained this sentence, "For this reason we will continue to provide access to the house for showing purposes." (Plaintiffs' Exhibit 4.)
On September 1, 1994, Chick sent a letter to Shaner refusing to agree to any extension, pointing out that the premises had been leased to Shaner at a reduced rate and indicating Chick expected possession on October 31, 1994. (Plaintiffs' Exhibit 5.)
On October 25, 1994, Shaner sent Chick a letter indicating that Shaner intended to vacate by the end of November, 1994 and enclosed a check in the amount of $775.00 marked "November 94 rent." This check was endorsed and negotiated by Chick on November 15, 1994. (Plaintiffs' Exhibit 6.)
On October 25, 1994, defendant's counsel caused a Notice to Quit to be served on Shaner indicating Shaner should vacate by November, 1, 1994. (Plaintiffs' Exhibit 7.)
On October 25, 1994, defendant's counsel wrote to Shaner that Chick had rented the premises to new tenants who would be expecting to take possession on November 1, 1994, and indicating that Chick did not consent to any holding over after October 31, 1994. (Plaintiffs' Exhibit 8.) On November 23, 1994, Shaner wrote to Chick indicating that Shaner had vacated the premises as of November 20, 1994, and providing a forwarding address. (Plaintiffs' Exhibit 9.)
Shaner acknowledged that Chick had never troubled or bothered them during their tenancy nor had Chick ever entered the premises during the term except for one occasion during the Labor Day weekend, 1994. Shaner testified that it was okay to go in even if Shaner was away as long as there was CT Page 8477 prior notice. Shaner was on vacation Labor Day weekend, 1994, and the following week.
Shaner learned that Chick had a new tenant on October 25, 1994. Shaner had done some minor repairs and cosmetics during their tenancy. Chick had authorized and paid for all repairs and maintenance, plumbing, etc. to premises when brought to her attention except for one modest plumbing bill which Shaner authorized unilaterally.
Chick is the sole owner of 47 First Street, Lebanon, and has owned the premises for thirty years.
The premises have been rented to various parties over the last sixteen years. At one time Chick resided in the subject residence.
Until just recently Chick has always taken care of the rental arrangements herself without professional help, and usually advertised when necessary in the Hartford Courant.
When the premises were first shown to Shaner in 1992, the premises were vacant. When first offered for rent, Chick asked $850.00 monthly for the premises but in due course agreed to $775.00. Chick did not want the premises empty during the cold months due to potential freeze problems, heating costs, etc. Chick's husband had been out of work for two years and she was desirous of renting the premises promptly.
When the second term of the lease was nearing a close, Chick called Shaner on either August 30, 1994 or August 31, 1994 concerning showing the premises to a prospective tenant and Shaner stated, "We are not denying you access."
On September 4, 1994, Chick called Shaner and left a message on their answering machine that Chick would be showing the premises to a prospect. (See Defendant's Exhibit C, SNET phone record of the call.)
Shaner testified he had a phone forwarding service for such messages.
On September 10, 1994, Chick entered into a lease of the premises with Ronald and Sharon Domain for a term November 1, CT Page 8478 1994 to October 31, 1995, at a monthly rent of $850.00. (Defendant's Exhibit D.)
The Domains stood ready and able to take possession on November 1, 1994. Because Shaner remained in possession, Chick was unable to accord Domain possession, and that lease was abrogated and terminated. On January 18, 1995, the premises were leased to Perry and Karen Madison for the term of one year, February 1, 1995 to January 31, 1996, monthly rental $850.00.
Chick had advised Shaner, by letter dated August 8, 1994, that no extension of the lease would be entertained or granted and also giving notice regarding showing of the premises. (See Defendant's Exhibit A.)
On December 22, 1994, Chick's counsel wrote to Shaner's counsel notifying Shaner of her intention to retain the security deposit for the reasons stated in the letter and the attached list of damages. The keys to the premises were returned to Chick on November 30, 1994. (Plaintiffs' Exhibit 9.)
In their complaint, Shaner basically claims first, a violation of section 47a-16 entitled "When landlord may enter rented unit" and damages flowing from an alleged improper entry and showing pursuant to section 47a-18a, and secondly, failure to return security deposit and accrued interest in accordance with section 47a-21. Section 47a-16 provides as follows:
 Sec. 47a-16. When landlord may enter rented unit.
(a) A tenant shall not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to inspect the premises, make necessary or agreed to repairs, alterations or improvements, supply necessary or agreed to services or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors.
 (b) A landlord may enter the dwelling unit without consent of the tenant in case of emergency.
(c) A landlord shall not abuse the right of entry CT Page 8479 or use such right of entry to harass the tenant. The landlord shall give the tenant reasonable written or oral notice of his intent to enter and may enter only at reasonable times, except in case of emergency.
 (d) A landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by Section 47a-16a, (3) pursuant to a court order, or (4) if the tenant has abandoned or surrendered the premises.
Section 7 of the lease for the period November 1, 1993 to October 31, 1994 covers the issue of entering the premises and provides for the entry to show the premises to tenants. It also provides for notice.
The unimpeached evidence clearly establishes that Chick never harassed Shaner relative to any claims for entry, that Chick only showed the premises once on the 1994 Labor Day weekend to the prospective tenant, Domain, who subsequently signed a lease with Chick, that on an earlier occasion Chick had called for permission to enter to show the premises to a prospect who never showed up which entry had been approved by Shaner, that Shaner had indicated that they had no objection to the premises being shown to prospects, and that Chick called on September 4, 1994 and left word on Shaner's answering service of her intention to show the premises and never received any objection mindful that Shaner's phone messages were being forwarded or received daily by Shaner.
Shaner claims damages and attorney's fees pursuant to section 47a-18a which provides as follows:
 Sec. 47a-18a. Judicial relief if landlord unlawfully enters. If the landlord makes an entry prohibited by section 47a-16a, or makes repeated demands for entry otherwise lawful but which have the effect of unreasonably harassing the tenant, the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. The tenant may also obtain injunctive relief to prevent the recurrence of the conduct or terminate the rental agreement. CT Page 8480
Chick's entry for the purpose of showing the premises to Domain was not prohibited by section 47a-16 or section47a-16a. Chick never made repeated demands for entry to Shaner but on the contrary allowed the tenant peaceful possession and acted on all requests for repairs promptly.
Chick never harassed the tenant. Chick at all times endeavored to notify the tenant Shaner if there was any prospect of entry and in the period of two years and one month there was only one entry to show the premises to Domain and Chick gave notice and the notice was reasonable.
Shaner also claims the return of the security deposit plus accrued interest and twice the value of said security deposit pursuant to section 47a-21.
Section 47a-21, in relevant part, provides as follows:
 (d) Payment of security deposit and interest at termination of tenancy. (1) Within the time specified in subdivision (2) and (4) of this subsection, the person who is the landlord at the time a tenancy is terminated, other than a rent receiver, shall pay to the tenant or former tenant: (A) The amount of any security deposit that was deposited by the tenant with the person who was landlord at the time such security deposit was deposited by the tenant with any damages which any person who was a landlord of such premises at any time during the tenancy of such tenant has suffered as a result of such tenant's failure to comply with such tenant's obligations, and (B) any accrued interest due on such security deposit as required by subsection (i) of this section. If the landlord at the time of termination of a tenancy is a rent receiver, such rent receiver shall return security deposits in accordance with the provisions of subdivision (3) of this subsection.
 (2) Upon termination of a tenancy, any tenant may notify his landlord in writing of such tenant's forwarding address. Within thirty days after termination of a tenancy, each landlord other than a rent receiver shall deliver to the tenant or former tenant at such forwarding address either (A) CT Page 8481 the full amount of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section, or (B) the balance of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section after deduction for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. Any such landlord who violates any provision of this subsection shall be liable for twice the value of any security deposit paid by such tenant.
Shaner vacated the premises on November 20, 1994 and returned the keys to the premises on November 30, 1994. (Plaintiffs' Exhibit 9.)
On December 22, 1994, counsel for Chick wrote to counsel for Shaner relative to the security deposit and attached a list of claimed damages in excess of the amount of the security deposit. (Defendant's Exhibit B.) This was within one month of the receipt of the letter from Shaner, received on November 28, 1994 and the delivery of the keys on November 30, 1994, and, therefore, complied with the provisions of section 47a-21, and was timely.
Chick's claimed damages, attached to the letter of December 22, 1994, were to the amount of $3,059.34 manifestly in excess of the security deposit of $1,550.00 plus accrued interest.
On the Cross Complaint, which Shaner did not move to strike, Chick claims damages as a result of losing Domain as tenant for one year at a monthly rent of $850.00 in that Shaner held over beyond the term of the lease, and in addition other costs and expenses to heat and maintain the premises and pay utilities until Chick was able to relet in February, 1995.
The holding over after October 31, 1994, manifestly was not with Chick's consent, see #16 of the Lease, but Chick's retention of the November check and endorsement of the same constituted at that point a month-to-month tenancy.
The court notices the revised wording as to this CT Page 8482 provision in the Madison lease.
The Notice to Quit (Plaintiffs' Exhibit 7) contained no wording as to the receipt of any subsequent payments being treated as use and occupancy. The testimony also indicated that during the period of October 8, 1994 to November 10, 1994, Scott Shaner had been called to active military duty with the Connecticut Air National Guard.
Shaner's possession of the premises after October 31, 1994 was on a month-to-month basis. $775.00 was paid for November. Shaner vacated on November 20, 1994 and surrendered the keys on November 30, 1994. (Plaintiffs' Exhibit 9.)
The expenses claimed by Chick after November 1, 1994 are the burdens of ownership and not damage to the premises caused by any misuse by the tenant, intentional damage and the like. Shaner left the premises as best the court can determine in a suitable, broom clean condition. No evidence was presented to the court as to the amount or nature of any damages paid by Chick to Domain, the prospective tenant, who had hoped to take possession November 1, 1994.
The plaintiff claims that the letter of Attorney McGrath, counsel for the defendant Chick under date of December 22, 1994, fails to comply with 47a-21 (d)(2) for two reasons. First, plaintiff claims the notice to retain that security deposit was mailed more than thirty days after the plaintiffs had notified the defendant of their vacating the premises. Second, the notice was not provided to the plaintiffs at their forwarding address by the landlord.
Plaintiff's Exhibit 9, the notice is dated November 23, 1994, one day after Attorney McGrath's letter. Exhibit 9 is Plaintiff's exhibit. This exhibit 9 has written on its face "Received 11/28/94," and "keys returned 11/30/94". Nothing was excised or blotted out or lined out on the exhibit.
The court is entitled to consider everything appearing on the exhibit.
The retention of the keys and their non-delivery until November 30, 1994 constituted constructive possession by the plaintiffs until that date. Therefore, the letter by Attorney McGrath on defendant's behalf was timely, to wit within thirty CT Page 8483 days.
The state of affairs being what they were between the plaintiffs and the defendant, both being represented by counsel by December 22, 1994, the sending of the notice to Attorney Kiley, plaintiffs' counsel, is understandable and reasonable and fully apprised the plaintiffs of the defendant's position.
The notations on Plaintiffs' Exhibit 9 are further supported as to factual foundation in Defendant's Exhibit B, letter of Attorney Kiley.
Judgment may enter for the plaintiff, Shaner, on the complaint for the security deposit of $1,550.00 plus accrued interest as reflected on Defendant's Exhibit F, Statement from the Peoples Bank.) Plaintiffs are not entitled to damages or attorney's fees under section 47a-18 based on a claimed violation. Chick did not violate section 47a-16. Plaintiffs are not entitled to twice the value of the security deposit pursuant to section 47a-21. As to the Cross Complaint Chick has not proved all of the allegations of said cross complaint and the court finds for the plaintiff, Shaner.
Judgment for the plaintiff, Shaner, for the security deposit of $1,550.00 plus accrued interest as reflected on Defendant's Exhibit F only.
Austin, J.